**J'ADA M. FINCH–SHEEN, Attorney General, Department of
Law, Government of the Virgin Islands, Petitioner**

v.

**UNITED INDUSTRIAL WORKERS OF NORTH AMERICA
OF THE SEAFARERS INTERNATIONAL UNION OF
NORTH AMERICA, ATLANTIC, GULF LAKES & IN-
LAND WATERS DISTRICT, AFL–CIO, Respondents**

Civil No. 81-360

District Court of the Virgin Islands

Div. of St. Thomas and St. John

January 7, 1983

BRENDA J. HOLLAR, ESQ., St. Thomas, V.I., *for petitioner*

ARNOLD M. SELKE, ESQ., St. Thomas, V.I., *for respondents*

CHRISTIAN, *Chief Judge*

## MEMORANDUM OPINION

This case is before the Court on cross motions for summary judgment. Because there is no genuine issue as to any material fact, the case is ripe for disposition at this time.

On November 7, 1980, the Department of Law and the respondent (hereinafter "the Union") entered into a collective bargaining agreement (CBA) to govern the employment relations between them. The Union, under the terms of the CBA, is the sole bargaining representative for the employees covered by the CBA, which includes "[a]ll [a]ssistant [a]ttorneys [g]eneral and all other attorneys employed by and performing legal services for the [e]xecutive [b]ranch of the Government of the Virgin Islands" CBA Art. I Section 1. The effective date of the CBA was October 1, 1980. It was to remain in effect until September 30, 1982. The CBA was approved by the Governor. The Legislature of the Virgin Islands adopted the agreement by Act No. 4506, 1980 V.I. Session Laws 242, December 9, 1980.

By the terms of the agreement, new assistant attorneys general were subject to a one-year "probationary period", during which time the new employee could be discharged "without cause". After the probationary period, however, such an employee may be discharged "for cause" only.

On March 24, 1980, Charles Husbands was employed by the Department of Law as an assistant attorney general. On March 20, 1981, while still fulfilling his one-year probationary period, attorney Husbands was discharged by the then Acting Attorney General Donald Bouuton, through the agency of one of his assistants. Pursuant to Article X of the CBA, attorney Husbands exhausted the grievance procedure prescribed therein and thereafter, also following CBA procedure, went to arbitration. On July 24, 1981, the arbitrator held a hearing on the matter. On September 14, 1981, the arbitrator rendered his decision in which he found that attorney Husbands had been wrongfully discharged and ordered that he be reinstated and given back pay.

The petitioner has appealed the decision of the arbitrator to this Court, alleging, inter alia, that the arbitrator exceeded his authority in that his decision modified the CBA. The respondent counter-

claimed for specific performance of the arbitrator's decision. Both sides have now moved for summary judgment.

 The first issue the Court must address is the standard of review and the scope of inquiry in reviewing an arbitrator's decision. Guidance in determining the standard and scope of review has most recently come from The United States Court of Appeals for the Third Circuit in Virgin Islands Nursing Association's Bargaining Unit v. Schneider, 668 F.2d 221 (3d Cir. 1981). The Court of Appeals there described the "limited function played by the courts in reviewing arbitral awards." Id. at 223, saying,

> A court cannot set aside an arbitrator's award merely because it disagrees with the arbitrator on the merits, for such a policy would undermine the federal policy of encouraging the settling of labor disputes by arbitration . . . . It must only determine whether the arbitrator's decision "draws its essence from the collective bargaining agreement" . . . [T]he arbitrator is bound to render a decision on the basis of the express terms of the collective bargaining agreement itself and the "industrial common law" or the "common law of the shop"—i.e. the practices of the industry and the shop which are impliedly part of the agreement. Thus, federal courts are limited to insuring that arbitration awards are based on the agreement and the law of the shop, and such awards must be upheld if they are not in "manifest disregard of the law" and can be rationally derived from the permissible sources of law.

668 F.2d at 223 (citations omitted). Thus, while our review function is limited, if the decision by the arbitrator is based on sources beyond the express terms of the CBA or the "industrial common law" or "common law of the shop", in such event then the Court may review the decision to determine if the arbitrator correctly applied these outside sources of law. We find that to be the case here. The arbitrator applied Virgin Islands law in rendering his decision, as well as applying the terms of the CBA. Hence his decision, as far as it construed Virgin Islands law in relation to the CBA, is properly reviewable by the Court.

 Much of the dispute between the parties revolves around the proper resolution of two seemingly conflicting legislative acts: 3 V.I.C. § 113(a) and Act No. 4506, 1980 V.I. Session Laws 242, December 9, 1980. 3 V.I.C. § 113(a), enacted in 1962, authorizes the Governor of the Virgin Islands to hire and discharge all assistant

attorneys general. Act No. 4506, by which the Virgin Islands legislature approved and implemented the CBA, provides that

> Notwithstanding any provision of law to the contrary, the conditions of employment of all Assistant Attorneys General and all other attorneys employed by and performing legal services for the Executive Branch of the Government of the Virgin Islands shall be governed through September 30, 1982, by the terms of the Agreement between the Department of Law, Government of the Virgin Islands, and the United Industrial Workers of North America . . . .

1980 V.I. Session Laws 242. In his opinion, the arbitrator concluded that the legislature could not override 3 V.I.C. § 113(a) and that therefore only the Governor had authority to discharge Husbands. In explaining this holding the arbitrator stated:

> The statutory provision [3 V.I.C. § 113(a)], upon Charles Husbands' being employed, became his contract of tenure. That provision made a binding contractual term between the Government and Husbands which protects his tenure against adverse action by anyone, but the Governor. That contractual provision can no more be voided or set aside by the Government or Legislature as to Husbands, than any party to a private or public contract may set any of its terms aside unilaterally.

Opinion of the Arbitrator at 2. We think the arbitrator is mistaken. If 3 V.I.C. § 113(a) ever was a part of Husbands' contract of tenure, that contract underwent mutual revision upon the creation, execution, and adoption by the legislature of the collective bargaining agreement. The CBA provides that the union shall be "the sole and exclusive bargaining representative for *all* employees covered by" the agreement. CBA art. I § 1 (emphasis added). Hence the union was acting on Husbands' behalf when the CBA was written and therefore the CBA became Husbands' contract with the Department of Law, superceding his prior contract. This conclusion is buttressed by the fact that the CBA also provides that "[t]here shall be no individual contracts concerning terms and conditions of employment between the Employer and any Employee covered by this Agreement." CBA Art. XII § 34. Thus it is clear that the CBA governs Husbands' conditions of employment. See Manning v. Bounton, 678 F.2d 13 (3d Cir. 1982) (construing same CBA).

■■ However, we see no irreconcilable conflict between Act 4506 and 3 V.I.C. § 113(a). Act 4506 states that the CBA governs the

conditions of employment of "all [a]ssistant [a]ttorneys [g]eneral and all other attorneys *employed by* and performing legal services for the [*e*]*xecutive* [*b*]*ranch* . . ." (emphasis added). As head of the executive branch, the governor is the proper party to discharge under the terms of the CBA as well as under 3 V.I.C. § 113(a). The petitioner stresses that the preamble of the CBA designates "The Department of Law" as the employer and that the Attorney General, as head of the Department of Law, is the proper party to discharge. We disagree. While the preamble does refer to the Department of Law, it appears to be a designation of convenience only for pinpointing which department in the Executive Branch is the subject of the agreement, for, in the first article of the CBA, entitled "Recognition", Section 1 states that those included in the union are "[a]ll [a]ssistant [a]ttorneys [g]eneral and all other attorneys *employed by* and performing legal services for the *Executive Branch* . . ." (emphasis added). This is the same language the Legislature of the Virgin Islands used when ratifying the CBA. Taken together, we find this shows a clear intention on the part of the Legislature, as well as the signatories to the CBA, that the executive branch is the employer under the agreement. Further support for this position is found in section 11 of the Revised Organic Act of 1954, 48 U.S.C. §§ 1541–1654, § 1591, which states, in pertinent part:

> The Governor shall have general supervision and control of all the departments, bureaus, agencies, and other instrumentalities of the executive branch of the government of the Virgin Islands . . . . He shall appoint, and may remove, all officers and employees of the executive branch of the government of the Virgin Islands, except as otherwise provided in this or any other Act of Congress, or under the laws of the Virgin Islands, . . .

The Governor, under the terms of the Revised Organic Act, has general supervision and control of the Department of Law. We do not see in Act 4506 any clear intention by the Legislature of the Virgin Islands to abrogate the wording in the Revised Organic Act to the effect that the Governor shall appoint and may remove all officers and employees of the executive branch or of 3 V.I.C. § 113(a), vesting the Governor with the power to appoint and remove assistant attorneys general.

Therefore we hold that the Governor, and not the Attorney General, is the proper party to remove assistant attorneys general.

However, the case will be remanded to the arbitrator to determine another issue. The Governor discharged Husbands on September 21,

130

1981, several months after the Attorney General's action. The arbitrator must determine if this September 1981 discharge by the Governor was proper.

## JUDGMENT ORDER

This cause came on for hearing on the cross motions of the parties for summary judgment. The Court having considered the said motion, and the briefs submitted in support thereof, and the Court having on this date filed its Memorandum Opinion,

The premises considered and the Court being fully advised,

IT IS ORDERED that this case be, and the same is hereby, REMANDED to the arbitrator for further proceedings consistent with the Memorandum Opinion of this Court.